UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HERMINIO GUZMAN-VALDEZ,<br><br>Petitioner,<br><br>v.<br><br>JOSEPH D. MCDONALD, Plymouth County Sheriff, TODD M. LYONS, Acting Director Immigration and Customs Enforcement, Boston Field Office MICHAEL KROL, New England Field Office Director, U.S. Immigration and Customs Enforcement, PATRICIA HYDE, Director of the Boston Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, KRISTI NOEM, U.S. Secretary of Homeland Security PAMELA BONDI, Attorney General of the U.S., DONALD TRUMP, President of the U.S.<br><br>Respondents. | Civil Action No. 25-12308-MJJ |

## MEMORANDUM OF DECISION AND ORDER

October 3, 2025

JOUN, D.J.

Herminio Guzman Valdez ("Mr. Guzman-Valdez" or "Petitioner") petitions the Court under 28 U.S.C. § 2241 and the Due Process Clause of the Fifth Amendment for relief from detention at the Plymouth County Correctional Facility. He filed his petition for habeas on August 18, 2025. [Doc. No. 1]. I granted Respondents extra time to file a response, until September 12, 2025. [Doc. No. 9]. On September 23, 2025, I held a hearing at which I requested Respondents to provide specific details pertaining to whether the officials who revoked Mr. Guzman-Valdez's release and gave him the informal interview had authority to do so under 8

1

C.F.R. § 241.4 and to what extent Mr. Guzman-Valdez was given fair notice and opportunity to be heard prior to and after detention. [Doc. Nos. 18 and 19]. On September 27, 2025, Mr. Guzman-Valdez filed an amended petition for habeas. [Doc. No. 22]. I held an evidentiary hearing on October 1, 2025. [Doc. Nos. 23 and 24]. Respondents called as a witness Keith Chan, the Assistant Field Office Director for U.S. Department of Homeland Security at the Burlington, Massachusetts Field Office ("AFOD Chan"), and also submitted a document titled "Delegation of Authority to the Directors, Detention and Removal and Investigation." [Doc. No. 25].

## I. FACTUAL BACKGROUND

From the documentary evidence submitted at and prior to the hearing, as well as AFOD Chan's testimony, I find the following facts:[1]

Mr. Guzman-Valdez is a citizen of Guatemala. [Doc. No. 11 at ¶ 6; Doc. No. 22 at ¶ 12]. On two occasions in 2013, Mr. Guzman-Valdez entered the United States without admission or parole and was subsequently detained and then removed from the United States. [Doc. No. 11 at ¶¶ 8–12; Doc. No. 22 at ¶ 16]. Then on June 24, 2019, Mr. Guzman-Valdez reentered the United States for a third time and was again detained. [Doc. No. 11 at ¶¶ 13–14]. This time however, he was released on an Order of Supervision because he had reentered with a minor child. [Doc. No. 11 at ¶ 15; Doc. No. 22 at ¶ 17].

That minor child is his daughter Norma Belinda Guzman-Valdez who suffers from multiple sclerosis. [Doc. No. 22 at ¶ 13]. She is now twenty-one-years-old and has a child of her own, a four-year-old daughter named Ariana. [*Id.*]. Due to Norma's multiple sclerosis, she depends on Mr. Guzman-Valdez for childcare, transportation, and financial stability. [*Id.*]. As a

---

[1] After the hearing, Respondents sought leave to file supplemental documents, which I denied because Respondents had ample opportunity to cure the deficiencies within their response and where further delay would be prejudicial to Mr. Guzman-Valdez. [Doc. No. 23].

2

result, Mr. Guzman-Valdez is also Ariana's primary caregiver, and she relies on him for daily care and emotional support. [*Id.*]. Since 2019, Mr. Guzman-Valdez has complied with all of the conditions of his release and has periodically reported to Immigration and Customs Enforcement ("ICE") as required.

On July 25, 2025, Mr. Guzman-Valdez was detained when he appeared for one of these routine check-ins with ICE. [Doc. No. 11 at ¶ 16; Doc. No. 22 at ¶ 18]. "ICE ERO [Enforcement and Removal Operations] officers determined that the Petitioner only had one child, who is no longer a juvenile." [Doc. No. 11 at ¶ 16]. "On the same day, ERO … revoked the Petitioner's order of supervision because, in the opinion of the revoking official, the purpose of release had been served, and ICE is prepared to affect the removal to Guatemala." [*Id.*]. At "10:56," Mr. Guzman-Valdez was served with a notice of revocation of release. [*Id.*; Doc. No. 22 at ¶ 23; Doc. No. 15-1 at 1–2]. It was signed by someone identifying him or herself as "w" on behalf of Patricia H. Hyde, Acting Director of the Boston Field Office. [Doc. No. 15-1 at 1]. Mr. Guzman-Valdez was then given an initial informal interview by Derrick Moore, a Supervisory Detention and Deportation Officer of the Hartford, Connecticut Field Office ("SDDO Moore"). [*See* Doc. No. 11 at ¶ 16; Doc. No. 24]. Mr. Guzman-Valdez did not understand what transpired and finished the appointment believing that he was free to go. [Doc. No. 22 at ¶ 19]. Prior to the filing of his original habeas petition, Mr. Guzman-Valdez's counsel had no information regarding what happened, as his paperwork had been confiscated by ICE. [*Id.*].

On July 30, 2025, counsel for Mr. Guzman-Valdez requested that Mr. Guzman-Valdez receive a reasonable fear interview with U.S. Citizenship and Immigration Services ("USCIS").

[Doc. No. 11 at ¶ 17]. He was transported to, and is currently detained at, the Plymouth County Correctional Facility in Plymouth, Massachusetts. [*Id*. at ¶ 1].[2]

## II. DISCUSSION

### A. Lawfulness Of Detention

The Department of Homeland Security may revoke the release of a petitioner like Mr. Guzman-Valdez if 1) "[t]he purposes of release have been served," 2) "[t]he alien violate[d] any condition of release," 3) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or 4) "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Section 241.4(l)(1) requires Mr. Guzman-Valdez "be notified of the reasons for revocation."

On July 25, 2025, Mr. Guzman-Valdez was served a Notice of Revocation, which stated his order of supervision was revoked "based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case." [Doc. No. 15-1 at 1]. The Notice of Revocation then outlined Mr. Guzman-Valdez's immigration history and stated that "the purposes for your release have been completed and ICE will effect your removal to Guatemala." [*Id*.].

#### 1. Authority to Revoke Release

Mr. Guzman-Valdez does not dispute that he was served the Notice of Revocation. He claims, however, that Respondents have not shown that the official who revoked his release had the authority to do so under ICE regulations. Respondents counter that ICE has broad,

---

[2] On September 8, 2025, Mr. Guzman-Valdez received a reasonable fear interview with USCIS, and a decision is forthcoming. [Doc. No. 11 at ¶ 18]. Counsel for Respondents represented at the October 1, 2025 hearing that an Immigration Judge had denied it.

4

discretionary authority to revoke an Order of Supervision in this context under 8 C.F.R. § 241.4 ("Section 241.4" or "§ 241.4"), and it has fully complied with its regulatory requirements.

Under § 241.4(l)(2),[3] the Executive Associate Commissioner has the authority to revoke release. And pursuant to 8 C.F.R. § 1.2,[4] since 2003, the Executive Associate Commissioner described in § 241.4(l)(2) is considered the Director of ICE. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) (noting that § 241.4 refers to previous Immigration and Naturalization Service position titles, and that after the Homeland Security Act, removal proceedings authority was transferred from INS to DHS, which includes ICE). Additionally, "under 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other official 'delegated the function or authority . . . for a particular geographic district, region, or area.'" *Id*. at 161 (quoting 8 C.F.R. §§ 1.2, 241.4(l)(2)).

---

[3] In relevant part, 8 C.F.R. § 241.4(l)(2), states,

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.

[4] In relevant part, 8 C.F.R. § 1.2, states,

> Unless otherwise specified, references [to Commissioner] after that date [March 1, 2003] mean the Director of U.S. Citizenship and Immigration Services, the Commissioner of U.S. Customs and Border Protection, and the Director of U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears…

> On or after March 1, 2003, pursuant to delegation from the Secretary of Homeland Security or any successive re-delegation, the terms [director or district director] mean, to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge. The terms also mean such other official, including an official in an acting capacity, within U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security who is delegated the function or authority above for a particular geographic district, region, or area.

5

> According to AFOD Chan's declaration, submitted before the hearings,
>
> > ICE Enforcement and Removal Operations ("ERO") officers determined that the Petitioner only had one child, who is no longer a juvenile. On the same day, ERO revoked the Petitioner's order of supervision because, in the opinion of the revoking official, the purpose of release had been served, and ICE is prepared to affect the removal to Guatemala.

[Doc. No. 11 at ¶ 16]. No details were provided as to who those ERO officers were, how they were able to determine that the Petitioner had only one child, whether the child was no longer a juvenile, whether the ERO officers had the authority to revoke Petitioner's order of supervision, or who the revoking official was. To answer these questions, I held an evidentiary hearing on October 1, 2025. [Doc. Nos. 23 and 23].

Respondents introduced a document dated June 6, 2003, and titled "Delegation of Authority to the Directors, Detention and Removal and Investigation," signed by the then Assistant Secretary of ICE, to show that the individual that signed Petitioner's Notice of Revocation had the authority to issue said Notice. [*See* Doc. No. 25]. According to the June 6, 2003, delegation document, the Secretary of Homeland Security delegated certain authority to the Assistant Secretary of ICE. [*See* Doc. No. 25]. The Assistant Secretary of ICE further delegated authority under 8 C.F.R. § 241 "relating to detention and removal of aliens, warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention" to deputy field office directors and other individuals.[5] [*See* Doc. No. 25].

---

[5] In relevant part, the June 6, 2003, delegation document states,

> Pursuant to the authority vested in the Secretary of Homeland Security by law, including the Homeland Security Act of 2002, as amended (HSA), and delegated to the Assistant Secretary for ICE in *Department of Homeland Security Delegation No. 7030*, I hereby delegate the following authorities to the following officials, including those in an acting capacity:

At the October 1, 2025, hearing, AFOD Chan testified that the Notice of Revocation was signed by Field Office Director Charpentier ("DFOD Charpentier").[6] I agree with Respondents' assertion that the June 6, 2003, delegation document grants authority to deputy field office directors; however, Respondents have not shown that a DFOD *actually* signed the Notice of Revocation. When questioned as to why DFOD Charpentier would sign the Notice on behalf of Patricia H. Hyde, Acting Director of the Boston Field Office, with the initial "w," AFOD Chan simply stated "It's so he can determine what documents he signed himself." Customarily, one who affixes a signature on behalf of someone else under a delegation of authority would initial that person's name with the initials of one's own name, for example, in this case, "Patricia Hyde/jpc," or "PH/jc," or some other similar variant. Without testimony from DFOD Charpentier that he in fact signed for FOD Hyde, or a persuasive explanation as to why DFOD Charpentier would identify himself with the initial "w," on the record before me, I cannot credit that DFOD Charpentier signed the Notice of Revocation on behalf of FOD Hyde under delegation of authority, and thus must conclude that Respondents have failed to show that an official with authority pursuant to § 241.4(l) signed the Notice of Revocation.

### 2. Informal Interview

---

> (2) Authorities of Director, Detention and Removal; Deputy Assistant Director, Field Operations Division; Field Office Directors; Deputy Field Office Directors; and Officers in Charge.
>
>> (n) Authority under INA § 241, 8 U.S.C. § 1231 and 8 C.F.R. Part 241, relating to detention and removal of aliens, warrants of removal, reinstatement of removal, self-removal, and release of aliens from detention;

[Doc. No. 25].

[6] The Court understood this to refer to John P. Charpentier, the Acting Deputy Field Office Director for ICE's Enforcement and Removal Operations in Burlington, Massachusetts which is part of the Boston Field Office. Therefore, to avoid confusion, I refer to him as "DFOD Charpentier" rather than FOD since Respondent Patricia H. Hyde is the Boston FOD.

Mr. Guzman-Valdez also argues that Respondents violated its own regulations and his due process rights because he was not given adequate notice of his revocation and a meaningful opportunity to be heard during his informal interview. Again, Respondents argue that ICE has broad, discretionary authority to revoke an Order of Supervision in this context under § 241.4, and it has fully complied with its regulatory requirements. In relevant part, Section 241.4(l)(1) states,

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

AFOD Chan had asserted in his declaration that, "[t]he Petitioner was served with a notice of revocation of release and given an informal interview for him to have an opportunity to respond to the reasons for the revocation of the order of supervision." [Doc. No. 11 at ¶ 16]. He did not provide any further information. Who gave him the informal interview? When? Where? Did that person have the authority to give the interview? How much time was Mr. Guzman-Valdez given to review the Notice of Revocation before he was interviewed? Was Mr. Guzman-Valdez afforded an opportunity to consult an attorney? Was there translator or an interpreter to assist him? How long was the interview? What questions were asked of him? What were his responses? Answers to these basic questions were necessary to determine whether Mr. Guzman-Valdez had a meaningful opportunity to respond to the reasons for the revocation of the order of supervision.

At the October 1, 2025, hearing, Respondents called only AFOD Chan as a witness. He testified that Supervisory Detention and Deportation Officer Derrick Moore of Hartford, Connecticut ("SDDO Moore") interviewed Mr. Guzman-Valdez the same day that he was detained on July 25, 2025. AFOD Chan referenced the existence of an "informal interview

8

questionnaire sheet." Respondents did not produce SDDO Moore as a witness nor produce the informal interview questionnaire sheet.

AFOD Chan's testimony that SDDO Moore provided Mr. Guzman-Valdez with the required interview is troubling. Respondents have failed to explain how it is possible that DFOD Charpentier in Burlington, Massachusetts, which is part of the Boston Field Office, signed the Notice of Revocation on behalf of FOD Hyde, when, according to AFOD Chan's own declaration and subsequent testimony, Mr. Guzman-Valdez was given the notice and the information interview in Hartford, Connecticut *the same day* he was detained, on July 25, 2025. Furthermore, AFOD Chan acknowledged that he does not have any personal knowledge of the July 25, 2025 interview and is not in charge of the Hartford, Connecticut office where Mr. Guzman-Valdez was interviewed.

AFOD Chan reiterated at the hearing that the purpose of release had been served. Although he does not possess any personal knowledge, based on his review of the "e version of the A-File," the minor child who came into the country with Mr. Guzman-Valdez is no longer a juvenile. He acknowledged that the child had multiple sclerosis as a minor but claimed he did not know whether that was the case today. While he acknowledges that his daughter is now 21 years-old, Mr. Guzman-Valdez asserts that his circumstances have not changed meaningfully to warrant revocation. Even though his daughter is no longer a minor, she still suffers from multiple sclerosis and depends on him for childcare, transportation, and financial stability. His daughter now has a daughter of her own, but due to her disease, she is not able to properly care for her. Mr. Guzman-Valdez not only continues to care for his daughter, but is also his granddaughter's primary caregiver, and she relies on him for daily care and emotional support. Respondents have

9

not produced any evidence that they considered, or even knew, these facts in determining that the "purpose of release had been served."

Accordingly, on the record before me, Respondents have not shown that they followed their own regulations and provided Mr. Guzman-Valdez adequate notice and a meaningful opportunity to be heard. *See Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (cleaned up) ("[I]t is well-settled that the essential requirements of procedural due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). What little facts that have been established suggest that Mr. Guzman-Valdez was not given such notice and opportunity. "[B]ecause ICE did not follow its own regulations in deciding to re-detain [Mr. Guzman-Valdez], his due process rights were violated, and he is entitled to release. And even if that were not so, he still would be released because [Respondents have not shown] he was [] afforded even the minimal due process that protects everyone—citizens and noncitizens—in the United States." *Ceesay*, 781 F. Supp. 3d at 166.

## III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. The Court <u>ORDERS</u> Mr. Guzman-Valdez be released to the same conditions as imposed by DHS on June 27, 2019.

SO ORDERED.

/s/ Myong J. Joun<br>
United States District Judge